286 So.2d 296

**The CONNREX CORPORATION, a corporation d/b/a Yocam Batteries**

**v.**

**DEPARTMENT OF REVENUE, State of Alabama.**

**Civ. 168.**

Court of Civil Appeals of Alabama.

Aug. 1, 1973.

Rehearing Denied Sept. 19, 1973.

Markstein & Morris, Birmingham, for appellant.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue and Asst. Atty. Gen., and William H. Burton, Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for appellee.

BRADLEY, Judge.

This is an appeal from a final decree of the Circuit Court of Jefferson County, in Equity, Birmingham Division, affirming a final assessment made against the appellant

by appellee for automobile accessory dealer's license tax imposed pursuant to the provisions of Title 51, Section 465, Code of Alabama 1940, as Recompiled 1958.

The appellee made final an assessment against appellant for the license on automobile accessory dealers for the tax year beginning on October 1, 1971 and ending on September 30, 1972. From this assessment appellant appealed to the Circuit Court of Jefferson County, in Equity, for a review.

The case was submitted to the trial court on the pleadings, an agreed stipulation of facts and exhibits. The trial court held that appellant was liable for the license imposed by Section 465, *supra*, in each of the fifty-eight counties of the state in which appellant sold automobile accessories and that it was due to pay in each of the fifty-eight counties the maximum license tax provided by Section 465, *supra*. It was further held that appellant was liable, in addition to the licenses required by Section 465, *supra*, for the license levied by Title 51, Section 609, Code of Alabama 1940, as Recompiled 1958, for the privilege of operating in the state as a transient dealer. From said final decree, appellant has perfected its appeal to this court.

The facts show that appellant purchased a transient dealer's license as required by Section 609, *supra* to sell automobile batteries. A state license of $30 was purchased as were fifty-eight county licenses of $5 each. During the year in question appellant sold automobile batteries from a truck at wholesale in each of the said fifty-eight counties.

The appellee then determined that appellant was liable for a state license tax in the maximum amount authorized by Title 51, Section 465, Code of Alabama 1940, as Recompiled 1958, for selling automobile accessories, i.e., automobile batteries from its trucks at wholesale in each of the fifty-eight counties of the state. Under this as-

sessment, the state license tax was $40 in each county. Appellee also assessed appellant pursuant to Title 51, Section 831(c), Code of Alabama 1940, as Recompiled 1958, with a county license of one-half of the state license required by Section 465, *supra*, for each of the fifty-eight counties.

Appellant, in his assignments of error, contends that the trial court erred in holding that the license tax assessment imposed against it pursuant to Section 465 was correct; that the trial court erred in finding that it was liable for the license tax assessed against it under Section 465; and that the trial court erred in finding that it was liable for the license taxes imposed by both Section 609 and by Section 465.

In brief, appellant argues that appellee incorrectly assessed it with the license tax authorized by Section 465 for that (1) the basis of the Section 465 assessment was on a county rather than on a city or town population basis; (2) the addition of one-half the amount required by Section 465 for each county was incorrect for that Section 831(a) and (c) only requires a county license of one-half the state license for each place of business in the county and appellant did not maintain a place of business in fifty-six out of the fifty-eight counties where it did business; and (3) the appellee, in determining whether a higher license than that required by Section 609 was due to be paid, considered that appellant had paid the state license under Section 609 in only one county, i.e., the first county in which a license was purchased under Section 609 reflected the purchase of a state license of $30 and a county license of $5, being a total of $35, and a county license of $5 in each county thereafter. Therefore, for comparison purposes, the first county showed $35 and each county thereafter showed only $5, requiring that any amount in excess of $5 in the other fifty-seven counties assessed as a license tax under Section 465 would have

to be imposed on appellant in addition to that required by Section 609.

Appellee argues that the only question to be decided by this court is whether or not it correctly levied the maximum license provided by Section 465, *supra*, against appellant in addition to the license tax imposed on appellant as authorized by Section 609.

Title 51, Section 609, Code of Alabama 1940, as Recompiled 1958, provides, in pertinent part, as follows:

"Each person doing business as a transient dealer as defined in this section . . . shall pay an annual license tax to the state of thirty dollars. The payment of one state license shall authorize such transient dealer to engage in such business in any county in the state upon the payment of a county license of five dollars in each such county. . . . *Provided, that the payment of the privilege license required by this section shall not authorize any transient dealer to sell any goods, wares, or merchandise for which a higher license is required without the payment of the higher license.* . . ." (Emphasis added.)

As previously stated, appellant purchased a state license as a transient dealer for $30 and a $5 county license in each of the fifty-eight counties where it sold batteries as required by Section 609. Appellee then told appellant that it would have to purchase a license under Section 465, *supra*, in the maximum amount therein provided as the state license on a countywide basis for each of the counties in which it sold batteries in addition to the license paid to it as required by Section 609.

Title 51, Section 465, as amended, Code of Alabama 1940, as Recompiled 1958, is as follows:

"Each person selling motor vehicle accessories, including automobile radios and air conditioning units, and motor vehicle parts, and motor vehicle batteries, and tires, shall pay the following annual license: In cities of:

Over 100,000 population .... $40.00
25,000 to 100,000 population .. 30.00
5,000 to 25,000 population ... 20.00
2,000 to 5,000 population .... 10.00
All other places, whether
    incorporated or not ...... 5.00

"Provided regularly licensed filling stations or garages are not required to pay the above assessories [sic] license if their stock of accessories at any time does not exceed the wholesale value of seventy-five dollars."

Appellee also assessed appellant with one-half of the state license tax deemed to be due under Section 465 as a county tax required by Section 831(a) and (c). Said provision provides, in pertinent part, as follows:

" . . . (a) Whenever a license is levied in this title, there shall be collected both a state and county license for each place of business, except as specifically otherwise provided. . . . (c) There is hereby levied for the use and benefit of and to be paid to the county in which the license is issued, in addition to all license taxes levied under the provisions of article 1 of chapter 20, for state purposes and which are payable to the judge of probate or commissioner of licenses, a sum equal to fifty percent of the amount levied for state purposes, except as otherwise specifically provided. . . . "

In support of its assessments, appellee relies heavily, but not solely, on the case of Harris Bros. v. State, 240 Ala. 160, 198 So. 443, arguing that that case is closely analogous and significant to the case at bar. A careful study of the *Harris* case and the statutes therein construed reveals that that case is not at all analogous, in the manner asserted by appellee, or relevant to the present issues.

In the *Harris* case our Supreme Court was concerned with what is now codified

as Title 51, Sections 611, 484 and 831(c). Without referring to these statutes in their entirety we would emphasize the point that each of these statutes contains a clause or phrase fixing a license tax relative to the selling of goods at a "fixed location" or a "place of business" in a county. These references are as follows:

"§ 611. . . . The payment of the privilege or license required by [this Schedule for transient vendors or peddlers] shall not authorize any transient vendor or peddler . . . *to sell any goods, wares or merchandise that are by law required to be sold at a fixed location, except upon the payment of the maximum license levied* under [the Schedule or Schedules] of this chapter *for the sale of merchandise at a fixed location*." (Emphasis added.)

Section 484 requires that each retail dealer in tobacco products shall pay to the State the tax indicated for:

" . . . [E]ach place of business owned or operated by retail dealers, whether under the same roof or not. . . ."

Thus the court in *Harris* held that tobacco products are required by law to be sold at a fixed place of business. And since these products must be so sold, then under the specific requirements of Section 611, that a transient vendor or peddler must buy the maximum additional license for goods, etc. required to be sold at a fixed location, logically a transient vendor or peddler must buy the maximum license required by Section 484 in order to sell tobacco goods in any county.

In addition, Section 831 as we have set it out, *supra*, also alludes to a "place of business." In *Harris*, the court reasoned that since tobacco products were required to be sold at a fixed place, and that since the transient vendor or peddler could sell such goods only upon payment of the maximum license, the payment of such license places the transient vendor or peddler in the position of a person paying the tobacco tax under Section 484 as for a place of business, therefore bringing Section 831 into effect.

As previously stated, Sections 609 and 465 contain no reference to the important phrases "place of business" or "fixed location" construed in *Harris*.

In our situation, construing Sections 609 and 465, we find no reference in either statute as to a "place of business" or a "fixed location." Nor may we read such phrases into the intent of these statutes where to do so would cause us to construe said statutes most strongly against the taxpayer.

Since the holding of the Harris case turned almost solely on the construction of the above mentioned phrases, we find no helpful analogy between that case and the case at bar.

Appellant argues that it should not be assessed with the Section 831(c) county license tax because the statute contemplates a fixed place of business as opposed to a transient dealer who travels from place to place. We agree. The term "place of business" does have connotations that would convey the impression that a fixed or permanent place, where people would come for purposes of trading or transaction of business, was envisioned. See Words and Phrases, Vol. 32A, pp. 140–153. See also Metcalf v. Sperry & Hutchinson Co., 268 Ala. 623, 108 So.2d 831. There being no fixed place of business in each county from which it transacted its business, for it sold its batteries from its trucks to retailers, appellant is not liable for the county license imposed by Section 831(c), *supra*. This means that appellant could only be liable for the state license tax imposed by Sections 465 and 609 in those instances where Section 465 is applicable.

In this regard, appellant argues that in only four counties could there be an additional tax levied on it under Section 465

and that would be in Jefferson, Mobile, Madison and Montgomery counties. In assessing the situation, appellant says that in deciding whether an additional license is due under Section 465 for a county, you start out by assuming that appellant has paid $35 as a state and county license in each of the fifty-eight counties, pursuant to Section 609. However, the language of Section 609 does not require a state license to be paid by a transient dealer in each county where he does business; it only requires *one* state license. But if he sells any goods in a county he must also purchase a $5 county license. The interpretation we put on this language is that the state license does not authorize sales in a single county of the state. It is only when the county license is purchased that sales can be made in a particular county. It is, of course, conceded that sales cannot be made in a county unless and until a state license has been purchased.

■ However, only for the purpose of determining whether or not a higher license is required in addition to that required by Section 609, we will assume that the state license of $30 was paid for each county wherein a transient dealer does business, so that in each county where a transient dealer does business it will be assumed that he has paid a license of $35. This construction of Section 609 is based on the principle that where the meaning of a statute is in doubt, such doubt is to be resolved in favor of the taxpayer and against the taxing authority. Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812; State v. Grayson Lumber Co., 271 Ala. 35, 122 So.2d 126.

It would then be incumbent upon appellee to ascertain if appellant transacted any business in any cities of a county which would require said appellee to pay the license tax required by Section 465.

It is quite apparent after reading Section 465 that the basis for assessing a license for the sale of automobile accessories is on a city or town population basis, not a coun-

ty basis. The audit performed on appellant's books resulting in the questioned assessment was on the basis of a county, and there is no mention of a county in Section 465.

■ It seems to us that the appellee should examine appellant's records of its sales to see where they were made and then fix the license tax according to the population of the city or town wherein the sale was made to determine the license, if any, due the state.

Should the sales be in areas where the state license could not amount to more than the license imposed under Section 609, there will be no additional license tax imposed under Section 465. See the proviso in Section 609, *supra.*

This approach to ascertaining whether or not a higher license tax than required by Section 609 is due to be collected, is very similar to the approach suggested by the Attorney General in his opinion to the Honorable Guy Hunt, Probate Judge, Cullman County, Alabama, Quarterly Report of the Attorney General, Vol. 121, p. 25, wherein Judge Hunt had inquired as to whether he should collect the license imposed by Title 51, Section 578, Code of Alabama 1940, as Recompiled 1958 in addition to the license collected under Title 51, Section 609, *supra.* Section 578 imposed a license tax on sellers of radios based on a graduated scale measured according to the population of the city where the sale was made.

The pertinent part of the Attorney General's opinion is as follows:

"The license for selling radios, Title 51, Section 578, supra, to which you also refer, is levied on a graduated scale and is measured according to the population of the city in which radios are sold, which somewhat complicates the matter. Whether or not however, the specific license for selling the article involved would be due can still be resolved by comparing the price of the license under

the applicable scale in Section 578, supra, to the transient dealer's license purchased under the provisions of Section 609 in the particular county involved. If the license is higher under the particular scale in which the licensee falls under Section 578 in the city involved than the amount which he has paid for the transient dealer's license in the county, then he would also owe the specific license for selling radios, if he is selling radios at wholesale off the same truck or vehicle."

The audit conducted by the appellee was not made on a city or town population basis, but on the maximum amount provided by Section 465 on a countywide basis and this was an incorrect basis for ascertaining the license tax due under Section 465; therefore we will reverse the decree of the Circuit Court so that it may remand the matter to appellee for an audit of the sale made by appellant in each county on a city or town population basis as required by said section. In performing such an audit, we would expect that appellee, after determining the license tax due under Section 465, would then compare this license tax with the license paid under Section 609, *supra,* on the basis of $35 per county to determine whether or not appellant owes in addition to the $35 considered paid under Section 609, the higher license tax required by Section 465.

For the errors committed by the trial court as herein pointed out, this case is reversed and returned to the trial court for remandment to appellee for the performance of an audit of appellant's books and records in accordance with the directions contained in this opinion so that an accurate and correct amount of license tax due by appellant can be ascertained.

Reversed and remanded with directions.

WRIGHT, P. J., and HOLMES, J., concur.